IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Brian W. Scott, #240345, ) | |
| ) | Civil Action No. 8:05-2690-GRA-BHH |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| E. Richard Bazzle, Warden of Perry ) | |
| Correctional Institution; and Henry D. ) | |
| McMaster, Attorney General of ) | |
| South Carolina, ) | |
| ) | |
| Respondents. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. On December 8, 2005, the respondents filed a motion for summary judgment. By order of this court filed December 9, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary dismissal procedure and the possible consequences if he failed to respond adequately. The petitioner filed his opposition to the motion for summary judgment on December 30, 2005. The Court issued a Report, on June 16, 2006, recommending that the District Court dismiss the petition for the petitioner's failure to file a timely petition. In an Order, dated July 12, 2006, the District Court declined to adopt that recommendation and remanded the case back to the Magistrate Judge for further consideration.

Subsequently, the plaintiff filed a notice of interlocutory appeal regarding a separate order concerning a motion to compel certain discovery, which the district court had denied. That appeal was dismissed by the Fourth Circuit Court of Appeals for lack of jurisdiction on January 4, 2007. The Court informally held the resolution of this motion in abeyance during the pendency of the appeal.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## **PROCEDURAL HISTORY**

The petitioner is currently confined at the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Greenville County. The Greenville County Grand Jury indicted the petitioner at the July 16, 1996, term of court for murder. He was convicted as charged and sentenced to life in prison. The petitioner filed a timely Notice of Intent to Appeal from that conviction. The South Carolina Supreme Court affirmed the conviction pursuant to Rule 220(b)(1), SCACR. *State v. Scott*, Mem. Op. No. 98-MO-96 (filed November 20, 1998).

Since that time the petitioner has filed various applications, motions, and appeals, including a state Application for Post-Conviction Relief ("APCR"). All such applications, motions, and appeals have been denied.

As the district court has already concluded that the petition is timely [Doc. 29] and the respondents concede exhaustion (Mem. Supp. Summ. J. at 6), the Court will dispense with a full recitation of the procedural history of the case. Instead, the Court incorporates the procedural history included in its June 16, 2006 report and recommendation, by specific reference [Doc. 25].

## **FACTS PRESENTED**

Neither party has included any clear description of the underlying facts of the plaintiff's criminal case. The Court thinks that some factual background is critical to an understanding of the plaintiff's current claims. The Court, therefore, has borrowed from the Initial Briefs of the Appellant and Respondent filed in the South Carolina Supreme Court in September and November of 1997, respectively. (R. 606-45.) By reciting such facts,

2

however, the Court has not concluded that genuine issues of fact exist as to any of them. They are included simply for general context.

On the day of the murder for which the plaintiff was convicted, the plaintiff was with a Tyrone Adams, James "Smooth" Johnson, and a Tyrone Longino, known also as "G." It is alleged that the men spent the day drinking at the plaintiff's apartment. At some point, the men left by automobile, possibly in search of marijuana.

It is undisputed that they stopped at a gas station. It is also undisputed that Adams made a telephone call. What transpired after that call, is greatly in dispute. Adams and Johnson were the prosecution's primary eyewitnesses. It is alleged that, when Adams returned to the car, the plaintiff was strangling Longino, or "G," and that at some point the plaintiff stabbed Longino. The men then took Longino's body to a nearby park and put his body in a dumpster.

It is the exculpatory nature of Adams' conflicting testimony concerning his ability to view the murder, which is at issue in this present petition.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e), provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.A. §2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. §2254(d)(2); *see Williams v. Taylor*, 120 S.Ct. 1495, 1516 (2000).

## **DISCUSSION**

**I.    GROUNDS TWO THROUGH FOUR**

As an initial matter, the respondents have failed to address the merits of three of four of the petitioner's grounds for relief.[1] The petitioner's first ground for relief relates to the alleged failure of the state to produce exculpatory evidence in the form of a 1994 statement of one of the prosecution's key witnesses, Tyrone Adams. (Habeas Pet. at 6-7.) The petitioner's second ground relates to the alleged presentation of false evidence to the jury in the form of a knife that the state claimed was the murder weapon used by the petitioner. (Habeas Pet. at 22-25.) The third ground for relief relates to the alleged perjury of Adams that he was not promised a plea agreement in regards to a separate murder charge, in exchange for his testimony against the petitioner. (Habeas Pet. at 33-34.) The final ground concerns the plaintiff's allegation that he was convicted on a second indictment for

---

[1] As stated, the respondents concede that the plaintiff has generally exhausted his state remedies and that the precise basis for his present claims were considered in his application for post conviction relief.

the same murder after the first indictment had been dismissed "with no intentions of restoring it at a later time." (Habeas Pet. at 40-41.)

The respondents' brief focuses almost exclusively on their contention that the entire habeas petition is untimely. That argument has been rejected by the District Court. As to the merits of the petitioner's claims, however, the respondents make no arguments as to grounds two through four whatsoever, and submit less than a two page rejoinder to the first ground for relief. Instead, the respondents have seemingly considered all four grounds to be reiterations of the first – the failure to produce the exculpatory statement of Adams. It is beyond debate that the petition involves three other distinct claims, (Habeas Pet. 22-25, 33-34, 40-41), claims which the petitioner has consistently raised at every step of his post-conviction efforts.

The Court, therefore, cannot consider the motion for summary judgment as being directed towards grounds two through four. Even if it could, the respondents have wholly failed to meet their burden to demonstrate that no genuine issues of fact remain, as they have not proffered any evidence or argument to that end. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.) It is not the Court's responsibility to construct the respondents' case for them. In meeting their obligations under Fed. R. Civ. P. 56, the respondents bear the obligation to reference specific items in the record and present an argument with appropriate legal citations. *See* Local Rule DSC 7.05(A)(2) & (3). This is not an instance where the respondents have made an inadequate argument; they have made no argument whatsoever. Moreover, as discussed *infra*, the respondents' failure to address grounds two through four has materially affected the Court's ability to consider the petitioner's first ground for relief.

The brevity and incompleteness of the respondents brief is of concern to the Court, in light of the nature of the allegations and the scope of the record. While the respondents

may be sure in their legal position, the issues before the Court are serious enough under the law that to be dismissive under the circumstances looks more akin to an affirmative strategy than to overconfidence.  In other words, after reviewing the voluminous record, the Court is suspicious of such a discounted treatment, when the totality of the factual and legal circumstances presents a case worthy of at least thoughtful and thorough consideration by the State and the Court.

**II.     First Ground for Relief:  Exculpatory Statement of the State's Witness**

As stated, the petitioner contends that the State, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), failed to produce a 1994 written statement of Tyrone Adams (R. at 845-46, "Notification of Intended Plea") that materially contradicted that same witnesses trial testimony against the petitioner.  In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id*. at 87.   The duty to disclose such evidence is applicable even though there has been no request by the accused, *see United States v. Agurs*, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence, *see United States v. Bagley*, 473 U.S. 667, 676 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Bagley*, 473 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 433-434 (1995).

To implicate Brady, therefore, the 1994 Statement must be deemed both "favorable" to the petitioner and "material" as to his guilt. The respondents contend that the contents of Adams's 1994 Statement are neither.

**1.     Evidence Favorable to the Petitioner**

The respondents first contend that the contents of Adams's 1994 Statement are not "favorable" to the petitioner because they are neither inconsistent with Adams's trial

6

testimony nor otherwise exculpatory. The Court disagrees. Adams's 1994 statement expressly states that Adams "could only speculate as to whom the actual perpetrator was as he (Defendant) did not witness the act" and "was merely present during the commission of the crime, with that presence being out of sight of the crime and without the knowledge of the act being in progress." (R. 845.) In contrast, at the petitioner's trial, Adams testified, "Brian was – had – was strangling 'G.'" (R. 314.) Unlike his 1994 statement, there was simply no equivocation in Adams's ability to identify the perpetrator as the petitioner, at trial (*see generally* R. 312-26):

> Q:   Okay. And did he [the petitioner] keep doing that to "G"?
>
> A:   Yes, ma'am.
>
> Q:   And you remember seeing that?
>
> A.   Yes, ma'am.

(R. 315; *see also* R. 316.) This testimony is in stark contrast to the 1994 Statement, in which Adams stated that he did not witness the crime and, thus, could only speculate as to the assailant. (*See* R. 845.) There is no question but that Adams's original Statement and his trial testimony are inconsistent and would, therefore, have impeachment value to the petitioner.

As stated, the duty of disclosure under *Brady* concerns both purely exculpatory evidence as well as impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). It is probably true that the inconsistencies in the 1994 statement are not purely exculpatory. In other words, they do not have the effect of directly exonerating the petitioner or specifically implying that the assailant was someone other than the petitioner. On its face, there is nothing exculpatory about the admission in the 1994 Statement that Adams could not actually see the perpetrator, other than to at least raise "the possibility that [another person] was [the] actual killer," *Kyles*, 514 U.S. at 442 n.13. The Statement only

has value for the petitioner when used in comparison with Adams's later, trial testimony that he unequivocally saw the petitioner strangle the victim.

The Statement, therefore, is really more in the nature of impeachment evidence. As stated, "[i]mpeachment evidence . . . falls within the *Brady* rule." *Bagley*, 473 U.S. at 676 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Such evidence is "evidence favorable to an accused," *Brady*, 373 U.S. at 87, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Accordingly, the evidence is "favorable" to the petitioner and should be considered of the quality and kind contemplated by *Brady* if its admission into evidence would have also been so material as to raise a "reasonable probability" that the jury would have decided differently. *See Bagley*, 473 U.S. at 682. The Court believes there are genuine issues of fact as to the materiality of the 1994 Statement such that summary judgment cannot be granted.

### 2.     **Materiality of the 1994 Statement**

The respondents next contend that the 1994 Statement is not "material" because (1) any impeachment value of the statement would be cumulative to other impeachment evidence actually presented at trial and (2) Adams was not the State's primary witness at trial. Whether the allegedly suppressed evidence was material is a mixed question of law and fact. *See Moore v. Marr*, 254 F.3d 1235, 1244 (10th Cir. 2001).

The United States Supreme Court has stated that "four aspects of materiality under *Bagley* bear emphasis." *Kyles* 514 U.S. at 434. First, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)." *Id*. Said differently, the materiality test is not a preponderance of the evidence standard: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received

a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "'undermines confidence in the outcome of the trial.'" *Id*. (citing *Bagley*, 473 U.S., at 678).

Second, materiality "is not a sufficiency of evidence test." *Kyles*, 514 U.S. at 434. "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id*. In *Kyles*, the Supreme Court expressly admonished the dissenting opinion for assuming "that Kyles must lose because there would still have been adequate evidence to convict even if the favorable evidence had been disclosed." *Id*. at 435 n.8. Such "sufficiency" analysis is not the "touchstone." *Id*. One shows a Brady violation by demonstrating "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id*. at 435.

Third, "once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review." *Id*. By definition, a failure to disclose material evidence could not be treated as harmless, since "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quoting *Bagley*).

Finally, materiality is measured "collectively, not item by item." *Id*. at 436. The Supreme Court stated that

> On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached.

*Id*. at 437.

In this case, the Court finds that the respondents have not met their burden to show that no genuine issue of fact exists as to whether the disclosure of the suppressed evidence to competent counsel could have made a different result reasonably probable.

The respondents first assail the materiality of the 1994 Statement on the basis that it is cumulative to other impeachment evidence. The Court is not persuaded. While it is true that the petitioner's lawyers elicited other impeachment evidence at trial,[2] "evidence of false testimony is a powerful form of impeachment." *See U.S. v. Cargill*, 17 Fed. Appx. 214 (4th Cir. 2001) (citing *United States v. Wallach*, 935 F.2d 445, 457 (2d Cir.1991) ("It was one thing for the jury to learn that [the witness] had a history of improprieties; it would have been an entirely different matter for them to learn that after having taken an oath to speak the truth he made a conscious decision to lie.")). "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors . . . that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). If the jury had known about Adams's prior statement, "it could have been a critical factor in the jury's credibility determination." *See Cargill*, 17 Fed. Appx. at 229.

The respondents next contend that the 1994 Statement is not "material" because Adams was not the primary witness for the prosecution's case. Specifically, the respondents claim that their primary witness, James Johnson, the fourth passenger in the car on the day of the murder, positively identified the petitioner as the perpetrator. (R. 362-96.) The respondents note that while Johnson was impeached for some inconsistencies in his account, the defense was not able to mount any serious attack on Johnson's testimony against the petitioner (R. at 401-12) and, further, that nothing in Adams's 1994

---

[2] Adams's credibility was also impeached by original statements to police officers that the blood in the car came first from a nose bleed and then later from a fight. (R. 173-76; 218-23.) Adams obviously later admitted that the blood was from the murder.

10

Statement undercuts Johnson's trial testimony as it concerned identification of the petitioner as the perpetrator of the crime.

This argument is precisely the type of analysis that the Supreme Court rejected in *Kyles*. *See Kyles* , 514 U.S. at 434-35 & n.8.  As emphasized above, "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict."  *Id*. at 434.  The evidence is not immaterial simply "because there would still have been adequate evidence to convict even if the favorable evidence had been disclosed."  *Id*. at 435 n.8.

Rather, the issue is whether in the absence of the 1994 Statement did the petitioner "receive[] a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Id*. at 434.  The Court finds that genuine issues of fact remain as to that question.

Cross-examination of Adams based on the inconsistency in his 1994 Statement could have, in the minds of the jury, (1) further reduced his credibility, generally; (2) legitimately raised the possibility of another perpetrator; and (3) allowed the defense to attack the "reliability of the investigation in failing to even consider [another person's ] guilt."  *Kyles*, 514 U.S. at 446.

Moreover, the Court cannot judge the materiality of the 1994 Statement in a vacuum. *See Kyle*, 514 U.S. at 436.  Materiality is measured "collectively, not item by item."  *Id*.  The Court "cannot make a series of independent materiality evaluations."  *Id*. at 441. As previously noted, the respondents have failed to put the petitioner's other three grounds for relief at issue in their motion for summary judgment.  Although not all of those grounds concern exculpatory evidence, without the ability to consider all of the issues "collectively" it is impossible to determine wether the petitioner would have obtained a favorable verdict if the jury had been "exposed to any or all of the undisclosed materials."  *Kyles*, 514 U.S. at 440.  It is a totality of the circumstances inquiry.

As a result, the respondents' motion cannot be granted as a matter of law.

### III.     OTHER SOURCE RULE

Finally, the Court notes that there is conflicting evidence of record as to the public availability of the 1994 Statement at the time of the petitioner's trial.  In one sentence, the respondents briefly allude to this issue but only in regards to their argument that the habeas petition was untimely.  It is the petitioner's position that the 1994 statement was not disclosed before trial and, further, that it had been placed in the criminal file of Adams and/or misfiled in an unrelated civil case. (Habeas Pet. at 4, 11; *see, e.g.* R. 836-837, 925, 968-69, 970-71, 975.)  Although the respondents essentially make no argument, legally or factually, concerning the matter, it is clear that they believe that because the 1994 Statement was located in a public file, the petitioner cannot rely on *Brady* and claim improper non-disclosure.[3]

The well-established rule is that in situations where exculpatory information is available to the defendant or lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine.  *See U.S. v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) (holding that there was no Brady violation where the defendant was free to question the witness in preparation for trial).  Said differently*, Brady* requires that the government disclose only evidence that is not available to the defense from other sources, either directly or through diligent investigation. *See Stockton v. Murray*, 41 F.3d 920, 927 (1994); *Wilson*, 901 F.2d at 380 ("government has no Brady burden when facts are available to a diligent defense attorney" (parenthetical to *Lugo v. Munoz*, 682 F.2d 7, 9-10 (1st Cir.1982))).

---

[3] Such reasoning was the basis of the State PCR Court in its consideration of whether or not the 1994 Statement was considered "after-acquired evidence" for purposes of excusing the petitioner's untimely state PCR petition.  (R. at 978.)

It would be an understatement of the highest order, to simply state that genuine issues of fact remain as to the timing and place of the availability of the 1994 Statement. Not only is the briefing in this case entirely unhelpful in this regard, but the Record so far as the Court could search it, unassisted, gives no clear answer as to the location of the 1994 Statement at the time of trial or whether such location could have been discovered through the use of due diligence.  Accordingly, genuine issues of fact remain as to whether the petitioner might be barred from relying on *Brady* as a result of the availability of the 1994 Statement in a public file.

## CONCLUSION AND RECOMMENDATION

Wherefore, it is recommended that the respondents' motion for summary judgment be denied as to all grounds for relief.

_____
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

January 31, 2007
Greenville, South Carolina

13