IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Brian W. Scott, #240345, | ) | |
| | ) | Civil Action Nos. 8:05-2690-GRA-BHH |
| Petitioner, | ) | 8:06-2730-GRA-BHH |
| | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| E. Richard Bazzle, Warden of Perry | ) | |
| Correctional Institution; and Henry D. | ) | |
| McMaster, Attorney General of | ) | |
| South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.  He has filed two petitions (05-2690, 06-2730), which have been consolidated.  This matter is before the Court on the respondents' motion for summary judgment, filed January 25, 2007 and amended on March 5, 2007.  (06-2730 [Docs. 13, 14, 23, 24.] By orders of this court filed January 26, 2007 and March 6, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately.  The petitioner filed his opposition to the motion for summary judgment on March 28, 2007.[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

---

[1]  See Doc. 47 of case 05-2690 for additional procedural history in this case, not squarely relevant to the resolution of the present motion.

## STATE PROCEDURAL HISTORY

The petitioner is currently confined at the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Greenville County. The Greenville County Grand Jury indicted the petitioner at the July 16, 1996 term of court for murder. (R. at 5.) The petitioner was convicted as charged and sentenced to life in prison. (R. at 43-590.)

The petitioner filed a timely notice of appeal. The direct appeal did not plead any of the grounds presently before the Court.[2] (R. at 606-21.)[3] That appeal was denied. (R. at 669-70.)

### Application for Post-Conviction Relief

The petitioner filed a *pro se* state Application for Post-Conviction Relief ("APCR") on January 17, 2000. (R. at 704-81.) The petitioner amended that application on July 31, 2000. (R. at 783-89.) Between the two applications, all of the grounds, now before the Court, were pled. The PCR court dismissed the application as being barred by the state statute of limitations, S.C. Code § 17-27-45. (R. at 1010-1114 [sic].[4] ) The South Carolina Supreme Court denied the petitioner's appeal of that decision. (See 05-2690 [Doc. 18 Part 2 at 28].)

---

[2] A specific description of the grounds pled in the petitioner's present habeas corpus petition can be found at page 5 of this report and recommendation.

[3] The record in this case is not all in one place. It is associated as attachments to numerous motions and filings of the parties. The citation "(R. at ___.)" is a reference to the state record originally submitted in case number 05-2690, Doc. 18. For all other record citations, the Court will attempt to reference the document by number and relevant case number in each, to wit, (See 06-2730 [Doc. ___ Part ___ at ____].) or (See 05-2690 [Doc. ___ Part ___ at ____].).

[4] The record is mislabeled. The PCR court order starts on 1010. The next page in the record, and of the order, is labeled as 1111, off by 100 pages. The pages of the Order should be enumerated as 1010-1014.

**Motion for New Trial**

Simultaneous to the pendency of his PCR application, the petitioner filed a Motion for a New Trial, on December 12, 2003.   (See 06-2730 [Doc. 23 Part 5 at 6-8].)  In that motion, the petitioner pled the same bases that he now argues in grounds 1 through 3 of this present habeas petition.  That motion was denied by the Honorable Edward W. Miller, on August 27, 2004.  (See 06-2730, [Doc. 23 Part 5 at 2-4].)

The petitioner appealed that decision.  The South Carolina Court of Appeals affirmed the denial of the motion for new trial, on June 19, 2006, (06-2730 [Doc. 17 Part 6]) ("Scott I").  The petitioner requested a rehearing, which was granted.  The court of appeals granted the request but in an opinion, dated September 21, 2006, again affirmed the denial of the petitioner's motion for new trial,  (06-2730 [Doc. 17 Part 9]) ("Scott II").

## FACTS PRESENTED

On the day of the murder for which the petitioner was convicted, the petitioner was with a Tyrone Adams, James "Smooth" Johnson, and a Tyrone Longino, known also as "G." It is alleged that the men spent the day drinking at the petitioner's apartment.  (06-2730 Doc. 23 Part 8 at 326.)  At some point, the men left by automobile, possibly in search of marijuana.  *Id*. at 335-37.

It is undisputed that they stopped at a gas station.  It is also undisputed that Adams made a telephone call.  *Id*. at 338.  What transpired after that call, is greatly in dispute. Adams and Johnson were the prosecution's primary eyewitnesses.  It is alleged that, when Adams returned to the car, the petitioner was strangling Longino, or "G," and that at some point the petitioner stabbed Longino.  *Id*. at 340, 347-49.  The men then took Longino's body to a nearby park and put his body in a dumpster.  *Id*. at 350.

3

**APPLICABLE LAW**

Title 28, United States Code, Section 2254(d) and (e), provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.A. §2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. §2254(d)(2); *see Williams v. Taylor*, 120 S.Ct. 1495, 1516 (2000).

**DISCUSSION**

As stated, the petitioner has filed two federal habeas corpus petitions with the Court, which have been consolidated.

In the petitioner's original habeas petition, *Scott v. Bazzle*, 05-2690, ("original petition") the petitioner pled four grounds for relief. In that petition, the petitioner's first

4

ground for relief, pursuant to *Brady v. Maryland*, 373 U.S 83 (1963), related to the alleged failure of the state to produce exculpatory evidence in the form of a 1994 statement of one of the prosecution's key witnesses, Tyrone Adams. (Original Pet. at 6-7.) The petitioner's second ground related to the alleged presentation of false evidence to the jury in the form of a knife that the state allegedly claimed was the murder weapon used by the petitioner. (Original Pet. at 22-25.) The third ground for relief related to the alleged perjury of Adams that he was not promised a plea agreement in regards to a separate murder charge, in exchange for his testimony against the petitioner. (Original Pet. at 33-34.) The final ground concerned the petitioner's allegation that he was convicted on a second indictment for the same murder after the first indictment had been dismissed "with no intentions of restoring it at a later time." (Original Pet. at 40-41.)

In their motion for summary judgment, filed on December 8, 2005 in the original case, the respondents only challenged the petitioner's first ground for relief. On March 30, 2007, the district court denied summary judgment on that ground because it found that genuine issues of fact remained. The district court also denied summary judgment on the other three grounds because the respondents had not made any showing whatsoever as to them.

In the interim, on September 28, 2006, the petitioner filed a second petition for habeas corpus relief, *Scott v. Bazzle*, 06-2730, ("second petition") reasserting grounds one through three of the original petition. The respondents moved for summary judgment on the second petition on January 25, 2007. On March 5, 2007, the respondents filed an amended memorandum in support of summary judgment. On March 30, 2007, the district court consolidated the two cases as they involved the same claims. The Court will consider each ground in turn.

As a preliminary matter, the Court would echo the sentiment of the South Carolina Court of Appeals that the petitioner, particularly in regards to his *Brady* claim, has made serious allegations, which the Court has attended to with great consideration. And, while

the Court has doubts that certain matters related to the petitioner's trial were handled as would have been preferred, the petition still must fail for legal insufficiency.

**I.    GROUND I**

The respondents first argue that the petitioner's *Brady* claim should be dismissed because the South Carolina Court of Appeals decision, in that regard, was not an unreasonable application of, or contrary to, *Brady*. The Court agrees.[5] As stated, the petitioner contends that the State, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), failed to produce a 1994 written statement of Tyrone Adams (R. at 845-46, "Notification of Intended Plea") that materially contradicted that same witnesses trial testimony against the petitioner.[6] Since the filing of the petitioner's original petition and the respondents' original

---

[5] As stated, the South Carolina Court of Appeals' issued two opinions in regards to the petitioner's appeal of the denial of his motion for a new trial. (06-2730 [Doc. 17 Part 6]) ("Scott I")*;* (06-2730 [Doc. 17 Part 9]) ("Scott II"). The lower court had concluded that the motion was untimely. That decision was affirmed by the court of appeals. Accordingly, the *Brady* claim is arguably procedurally defaulted for the same reasons as discussed below concerning grounds 2 through 4. But, because the South Carolina Court of Appeals specifically addressed the *Brady* issue in its two opinions, the Court will also consider whether the Court of Appeals decision was either contrary to, or an unreasonable application of, *Brady*. The *Brady* issue was the only ground in the motion for new trial, filed 6 years after the petitioner's conviction, which had any colorable claim as being timely filed because it was based on an allegation of after-discovered evidence. The other grounds before the Court were unquestionably denied as being untimely and were not treated by the South Carolina Court of Appeals in any respect. *See id.*

[6] Adams' 1994 statement expressly states that Adams "could only speculate as to whom the actual perpetrator was as he [the defendant] did not witness the act" and "was merely present during the commission of the crime, with that presence being out of sight of the crime and without the knowledge of the act being in progress." (R. at 845.) In contrast, at the petitioner's trial, Adams testified, "Brian was – had – was strangling 'G.'" (R. at 314.) Unlike his 1994 statement, there was simply no equivocation in Adams' ability to identify the perpetrator as the petitioner, at trial (*see generally* R. at 312-26):

    Q:    Okay.  And did he [the petitioner] keep doing that to "G"?

    A:    Yes, ma'am.

    Q:    And you remember seeing that?

    A.    Yes, ma'am.

(R. at 315; *see also* R. at 316.)  This testimony is in stark contrast to the 1994 Statement, in which Adams stated that he did not witness the crime and, thus, could only speculate as

motion for summary judgment, the South Carolina Court of Appeals issued two opinions concluding that the petitioner's *Brady* claim was without merit. (06-2730 [Doc. 17 Part 6]) ("Scott I")*;* (06-2730 [Doc. 17 Part 9]) ("Scott II"). In so concluding, the court of appeals found that even if the prior statement of Adams was inconsistent with his trial testimony and, further, that even if it was improperly withheld, the prior statement was not material. *Id*.

In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. The duty to disclose such evidence is applicable even though there has been no request by the accused, *see United States v. Agurs*, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence, *see United States v. Bagley*, 473 U.S. 667, 676 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 433-434 (1995). To implicate Brady, therefore, the 1994 Statement must be deemed both "favorable" to the petitioner and "material" as to his guilt.

Relying on *U.S. v. Augurs*, 427 U.S. 97, 112-13 (1976), the South Carolina Court of Appeals reasoned, in its final opinion on the petitioner's motion for new trial, as follows:

> In the case at bar, the State relied on trial testimony of Adams as well as Johnson. Arguably, Johnson's testimony is the stronger of the two, considering that Johnson was in the car seated next to Scott during both the strangling and the stabbing. Adams' trial testimony confirmed he was outside the car when he saw Scott strangle Longino and inside the car when Longino

to the assailant. (See R. at 845.) The respondents continue to profess that the two statements are consistent. As the Court has already concluded (05-2690 [Doc. 47]), there is no question but that Adams' original Statement and his trial testimony are inconsistent and would, therefore, have impeachment value to the petitioner. But this conclusion is of no moment here. As will be discussed, the South Carolina Court of Appeals reasonably concluded that the evidence, even if it held impeachment value, is not material.

was stabbed. In addition, police recovered Adams' blood-soaked clothes, suggesting he was in close proximity to Longino when he was stabbed. Police also recovered a long knife from Scott's person. That knife was consistent with Johnson's eyewitness testimony and with the wound on Longino's chest.

The document Scott complains the prosecution withheld does little to refute the trial testimony. In the document, Adams claims he did not see the crime, but he did help drive the car and move the body. In the document, Adams does not differentiate between the strangling and the stabbing. While the document may diminish Adams' credibility, it does not offer exculpatory evidence which would create a reasonable doubt as to Scott's guilt. As such, if the defense was in possession of the document at trial, its only purpose would be to impeach Adams' trial testimony. Even if the jury would have given less credit to Adams' testimony, the record taken as a whole still supports a guilty verdict.

(06-2730, Amend. Mem. Supp. Sum. J. at 17.); (06-2730 [Doc. 17 Part 9]) ("Scott II").

Accordingly, the court of appeals determined that (1) another witness's (Johnson's) testimony was more important to the prosecution's case; (2) Johnson's testimony was compelling and consistent; and (3) whatever impeachment value the allegedly exculpatory statement held, it was not enough to undermine the credibility of the verdict, *Kyles* 514 U.S. at 434.[7]    These are reasonable bases, under federal law, to conclude that the prior

---

[7] As addressed at length by this Court in a prior Order (05-2690, [Doc. 47].), *Kyles* is the best articulation of the materiality element of a *Brady* claim. *See Kyles* 514 U.S. at 434-37. The materiality test is not a preponderance of the evidence standard but a reasonable probability one: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* The Supreme Court went on to say, "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S., at 678). Although, the South Carolina Court of Appeals did not site *Kyles* nor rely on any of its specific instruction in *Scott* II, the Court does not believe that any of its conclusions related to the materiality of the prior statement are at odds with *Kyles* or otherwise an unreasonable application of its holdings. *See* (06-2730 [Doc. 17 Part 9]) ("Scott II").

But, even if the court of appeals' *Scott* II decision was erroneous in light of *Kyles*, the Court could not disturb it. For it is clearly not unreasonable. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (plurality opinion).

8

statement was not material.  The court of appeals made the same determination in its original opinion denying the petitioner's appeal concerning his motion for a new trial.[8]  (See 06-2730 [Doc. 17 Part 6]) ("Scott I").  The Court cannot disturb the state court's reasoned conclusion.

## II.    GROUNDS II AND III

The respondents argue that the petitioner's second and third grounds are procedurally defaulted.  The Court agrees.  In his second ground, the petitioner alleges that a knife shown at trial was erroneously referred to as the murder weapon, when, in fact, it was not.  In his third ground, the petitioner contends that Adams falsely testified that he had not received any consideration, for his pending murder charge, in return for his testimony against the petitioner.

"Under the well-established doctrine of procedural default, a federal habeas court may not review a claim that a state court has found to be clearly and expressly defaulted under an independent and adequate state procedural rule . . . ." *Weeks v. Angelone*, 176 F.3d 249, 269 (4th Cir.1999).  A state rule is adequate if it is "firmly established," and regularly and consistently applied by the state court, and is independent if it does not "depend[ ] on a federal constitutional ruling."  *Id.*  (citations and quotations omitted).

The petitioner filed his state Application for Post-Conviction Relief on January 17, 2000 and an amended petition on July 31, 2000.[9]  In that action, as here, the petitioner argued both that the prosecution had misrepresented the knife as the murder weapon and that Adams had offered false testimony concerning his plea agreement.  (Tr. at 785.)  The PCR court dismissed the entire application as untimely because it was filed outside of the state statute of limitations for filing such an application, S.C. Code Ann. § 17-27-45(a).  (Tr.

---

[8]  In that opinion, the court of appeals specifically relied on *Kyles*.

[9]  The amended application specifically incorporates all the grounds of the original PCR application by reference.  (R. at 783.)

9

at 1010-1114 [sic].)   The petitioner's appeal of that decision was denied by the South Carolina Supreme Court.  (05-2690 [Doc. 18, Part 2 at 28].)

The petitioner also attempted to plead the knife ground in a motion for a new trial, filed July 22, 2004, almost 6 years after the appeal of his 1998 conviction had ended.  (See 06-2730, [Doc. 23 Part 5 at 7].)   The court dismissed the motion for new trial as untimely because, pursuant to S.C. R. Crim. P. 29(b), the motion should have been made within a reasonable time and must have been grounded in discovery of evidence after trial.  *Id*. at 2-4.  As previously stated, in two separate opinions, the South Carolina Court of Appeals affirmed the denial of the motion for a new trial.  (Amend. Mem. Supp. Sum. J. at 17.);(06-2730 [Doc. 17 Part 6]) ("Scott I"); (06-2730 [Doc. 17 Part 9]) ("Scott II").

Both the South Carolina statute of limitations for PCR applications and Rule 29(b) are independent and adequate state grounds, which acted as a procedural bar to the petitioner's claims regarding the knife and the allegedly false testimony of Adams concerning his plea agreement.[10]   As a result, the Court may not entertain those grounds in his federal habeas petition.  *See Weeks*, 176 F.3d at 269.

The petitioner's procedural default, however, may be excused if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage

---

[10]  In his amended response to summary judgment and a later filed document (06-2730, [Doc. 26 at 4-5] [Doc. 29]), the petitioner appears to contend that the South Carolina Court of Appeals did rule on the merits of his "false evidence" claim concerning the knife, as well as his other current claims.  In support, the petitioner quotes from the *Scott* II concerning his motion for new trial.  The Court has thoroughly reviewed *Scott* I and *Scott* II.  And, while the court of appeals did address the merits of the petitioner's *Brady* claim, it clearly did not entertain the petitioner's claim concerning the knife, on its merits, or any other claim that was deemed procedurally barred by the lower court. Therefore, this Court has dealt with the merits of the *Brady* claim and not relied on any procedural default of it. But, the last ruling of the state court on the substance of grounds 2 through 4, now before this Court, was that they were out of time.  (See 06-2730, [Doc. 23 Part 5 at 7].)   The court of appeals did not expressly or implicitly reverse that conclusion in either *Scott* I or *Scott* II. (06-2730 [Doc. 17 Parts 6 & 9].)

of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The petitioner has not met this burden nor even attempted to.[11]

## III.    Ground IV

As previously stated, in the original petition to this Court (05-2690), the petitioner stated four grounds for relief.  The district court denied summary judgment as to all four grounds, in part because the respondents did not move for summary judgment as to grounds 2 through 4.  In that same Order, the district court consolidated that case with the second petition (06-2730).  The Court interprets the consolidated petition as containing all four original grounds for relief.

The respondents, however, in their amended motion for summary judgment have only sought dismissal of grounds 1 through 3.  Notwithstanding, the Court finds that ground 4 is also procedurally defaulted for the same reasons as grounds 2 and 3.  Ground 4, which alleges that the State wrongly re-indicted the petitioner after having previously terminated a prior indictment, was pled in the petitioner's original PCR application (R. at 711-12.) and was deemed to be time barred.   (R. at 1010-1114 [sic].)  It was not a part of the petitioner's motion for a new trial.  (See 06-2730 [Doc. 23 Part 5 at 2-4].)  Accordingly, the Court finds that it is defaulted for the same reasons as grounds 2 and 3.

---

[11]  Throughout the course of the litigation of these two petitions, the petitioner has argued repeatedly that his motion for new trial, PCR applications, and his federal petitions for habeas corpus are all timely because the prior and allegedly exculpatory statement of Adams was after-discovered evidence, which extended, in various ways, his time for making such motions, applications, and petitions.   This point, repeatedly addressed by the decisions of the state courts, is irrelevant to whether grounds two through four are procedurally defaulted, because those grounds are not based on any after-discovered evidence and certainly not the allegedly after-discovered evidence of Adams' prior statement.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, it is recommended that the respondents' motion for summary judgment be GRANTED.

BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

August 10, 2007
Greenville, South Carolina

12